**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AQUALLIANCE, a non-profit corporation, and CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>**Plaintiffs,**<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION, a federal agency; RICHARD J. WOODLEY, in his official capacity; LOWELL PIMLEY, in his official capacity; and DAVID MURILLO, in his official capacity,<br><br>**Defendants,**<br><br>SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, *et al.*,<br><br>**Defendant-Intervenors.** | Case No. 1:14-CV-000945-LJO-BAM<br><br>OREDER FOR SUPPLEMENTAL BRIEFING; AND<br><br>ORDER DENYING WITHOUT PREJUDICE REQUEST FOR TEMPORARY RESTRAINING ORDER (DOC. 68) |

Plaintiffs Aqualliance and the California Sportfishing Protection Alliance ("Plaintiffs"), both non-profit environmental organizations, bring this lawsuit against the United States Bureau of Reclamation ("Reclamation" or "the Bureau"), as well as various federal officers (collectively, "Federal Defendants"), alleging that the Bureau violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq*, by approving the "2014 San Luis & Delta-Mendota Water Authority Water Transfer Project" (the "2014 Transfer Project"), which would permit water rights holders or contractors north of the Sacramento-San Joaquin Delta ("Delta") to sell water to members of the San Luis & Delta-Mendota Water Authority ("SLDMWA"), whose members then would make use of the water in areas

1

that lie south of the Delta. Doc. 1 ("Compl.") at ¶ 57. The Bureau's role would be to review any proposed transfers and facilitate those transfers by conveying the water through the Delta by way of the Jones and Banks Pumping Plants and the Delta-Mendota Canal. *Id*.

In April 2014, the Bureau issued an Environmental Assessment ("EA") and approved a Finding of No Significant Impact ("FONSI") for the 2014 Transfer Project under NEPA. Among other things, the EA and FONSI state that "[s]pecial status fish species," such as the Delta smelt, "are generally not in the Delta during the transfer period (July-September) and effects to these fish species from transferring water during this timeframe were considered in the [National Marine Fisheries Service and U.S. Fish and Wildlife Service Biological Opinions]." Allen Decl., Ex. 2 ("Final EA"), Doc. 34, at 3-13; *id*., Ex. 3 ("FONSI") at 8.

Having thoroughly reviewed the briefs and supporting documents filed thus far in connection with the pending motion for preliminary injunctive relief, the Court finds that supplemental briefing is required to resolve accurately the threshold question of whether there is a likelihood of success on the merits on Plaintiffs' challenge to the substance of the EA sufficient to meet the requirements of the Ninth Circuit's sliding scale injunctive relief test. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

In the Ninth Circuit, an EA may be invalidated where it "fails to address certain crucial factors, consideration of which is essential to a truly informed decision whether or not to prepare an EIS." *In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1072 (9th Cir. 2014). In *Foundation for the North American Wild Sheep v. U.S. Department of Agriculture,* 681 F.2 1172, 1174-75, 1178-80 (9th Cir. 1982), for example, the USDA issued an EA approving the reconstruction of two mining access roads through an area occupied by one of the few remaining herds of desert bighorn sheep. Among other things, the EA failed to estimate the amount of traffic expected on the road or consider the fact that the road passed close to a "mineral lick" used by the bighorn. *Id*. at 1178-79. "The absence of this crucial information render[ed] a decision regarding the sheep's reaction to the traffic on [the road] is necessarily uninformed." *Id*. at 1181. In contrast,

*Greenpeace Action v. Franklin*, 14 F.3d 1324, 1333 (9th Cir. 1992), concerned an EA approving the National Marine Fisheries Service's ("NMFS") approval of a plan to regulate fishing in an area populated by the Stellar sea lion. While Greenpeace's evidence demonstrated that there was uncertainty as to how the fishing would affect the sea lion and that NMFS did not prove harm to the sea lion was impossible, the Ninth Circuit refused to set aside NMFS's decision because to do so would require the Court to decide that the views of Greenpeace's experts have more merit than those of NMFS. *Id.* at 1333.

Here, the Court believes that Plaintiffs' challenge to the content of the EA amounts to an assertion that the EA fails to acknowledge a "crucial factor," namely that delta smelt will be located in the Delta this summer. The record now before the Court establishes that at least some delta smelt will be drawn into the Delta this summer, although what portion of the population will be in the Delta and how far into the Delta that portion will be drawn is disputed. The record also establishes that a scientific dispute exists with regard to whether those smelt that are drawn into the Delta will be adversely impacted by the 2014 Transfer Project. At least with respect to the likelihood of success on the merits inquiry, the Court must defer to agency experts where scientific disputes exist. *Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1093 (9th Cir. 2005) (finding that, in granting a preliminary injunction, "the district court committed legal error by failing to respect the agency's judgment and expertise"). The Parties are therefore asked, for the sake of this order only, to assume that the Court must resolve this dispute by finding that the smelt will, in fact, <u>not</u> be "significantly impacted" for NEPA purposes by the 2014 Transfer Project. The Parties are also asked to assume that, under *Greenpeace*, this requires a finding that Reclamation has <u>not</u> failed to address a "crucial factor," because the presence of some portion of the smelt in the Delta cannot be "crucial" if the Court must side with Federal Defendants' expert evaluation that such circumstances will not cause a "significant impact."

Nonetheless, the lack of analysis in the EA raises separate NEPA compliance issues. An EA is meant to be a "concise public document ... that serves to," among other things "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement

or a finding of no significant impact." 40 C.F.R. § 1508.9. An EA is "unacceptable" if it is "indecipherable to the public." *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt*., 387 F.3d 989, 996 (9th Cir. 2004). Here, the EA's discussion of the key issues is limited to the following:

> The Proposed Action would result in increased conveyance [of water] through the Delta during the transfer period (July through September, unless it shifts based on feedback from NMFS and USFWS). <u>Special status fish species are generally not in the Delta during the transfer period (July-September) and effects to these fish species from transferring water during this timeframe were considered in the [National Marine Fisheries Service (NMFS) and U.S. Fish and Wildlife Service (FWS) Biological Opinions]</u>. Transfers would slightly increase inflow into the Delta, but would not change outflow conditions as compared to the No Action Alternative. The incremental effects of transfers on special status fish species in the Delta from water transfers would be less than significant.

Final EA at 3-13 (emphasis added). It is permissible for Reclamation to incorporate by reference the reasoning contained in an ESA document, *Nw. Envtl. Def. Ctr. v. Nat'l Marine Fisheries Serv*., 647 F. Supp. 2d 1221, 1247 (D. Or. 2009), and Reclamation clearly incorporates by reference into the Final EA the content of the 2008 Fish and Wildlife Service's Endangered Species Act ("ESA") Biological Opinion ("2008 BiOp"). Reclamation also points to numerous post-2008 BiOp ESA consultation documents that purport to update the findings of the 2008 BiOp by addressing more recent developments. Yet, on its face, the EA fails to reference any of these updates. Nor does the EA acknowledge that the relevant standard under NEPA is legally distinct from that under the ESA. How then is this EA not indecipherable to the public on the subject of the significance of impacts to smelt in the Delta? To what extent is the need for decipherable discussion of that subject in the EA obviated by a finding under *Greenpeace* that omission of discussion of impacts to smelt in the Delta is not an omission of a "crucial factor"? The Parties are directed to address those questions in writing on or before 5:00 p.m., Wednesday, July 9, 2014. To permit the Court time to digest this supplemental briefing, the hearing currently set for July 10, 2014 is VACATED. The Court will reset the hearing as appropriate in consultation with the Parties.

The Court is aware that Reclamation is likely to begin transferring water under the 2014 Transfer Project at the rate of 100 cubic feet per second ("cfs"), perhaps as early as today, July 7, 2014. There is

4

no indication in the record that such a small flow alteration will cause immediate injury to the smelt, permitting the short delay in the proceedings caused by this supplemental briefing request. For the same reason, the request for a temporary restraining order, filed earlier today, is DENIED WITHOUT PREJDUDICE.

IT IS SO ORDERED.

Dated: **July 7, 2014**         **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE